UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

I. PEREZ, a minor, by and through his
Guardian ad Litem, Israel Perez; and
NORMA PEREZ,

                                    Plaintiff,

v.

UNITED STATES OF AMERICA, et. al.,

                                    Defendant.

Case No.:  16cv01911 JAH-MDD

**ORDER ON MOTIONS IN LIMINE**

## I. Introduction

Pending before the Court are the parties' motions *in limine*.    Plaintiffs filed 8 motions *in limine*: (1) to preclude evidence or argument that future collateral source payments should be deducted from Plaintiff's economic damages (Doc. No. 26); (2) to preclude evidence or argument regarding inadmissible collateral source payments (Doc. No. 27); (3) to preclude Defendant from offering expert medical testimony from physicians not designated as experts (Doc. No. 28); (4) to preclude evidence or arguments that Plaintiff I. Perez is not entitled to compensation for care that has been or will be provided by his family (Doc. No. 29); (5) to preclude evidence pursuant to Federal Rule of Evidence 403 (Doc. No. 30); (6) to limit the testimony of Mary Kay Dyes, MD (Doc. No. 35); (7) to

preclude the opinions of Mark Gustafson regarding Plaintiff's claim for loss of earning capacity (Doc. No. 32); and (8) to limit the testimony of David A. Miller, MD (Doc. No. 33). Defendants filed 3 motions *in limine* seeking to exclude: (1) testimony and evidence regarding Plaintiffs' damages for future private school expenses (Doc. No. 20); (2) Plaintiff's opinions on the costs of future medical care for I. Perez (Doc. No. 23); and (3) Dr. William Weiss's opinions on the qualifications and competency of a Navy radiologist to interpret MRI studies performed on I. Perez (Doc. No. 24).

The parties appeared before this Court on May 14, 2018, for a hearing on the motions. After hearing oral argument, the Court took the matters under submission.

## II. Discussion

## A. Plaintiffs' Motions

### 1. Motion to Preclude Evidence or Argument that Future Collateral Source Payments Should be Deducted from Plaintiff's Economic Damages

Both parties assert arguments surrounding the proper measure of damages and the admissibility of evidence of offsets to damages. Plaintiffs' first motion in *limine* seeks to exclude evidence of insurance coverage available under the Affordable Care Act ("ACA") in determining Plaintiff I. Perez's future care costs. Their second motion in *limine* argues any evidence of payments from collateral sources, including Medi-Cal, Medicare, TRICARE, CCS, IHSS, any Regional Center, and cash contributions by family members should not be considered in calculating Plaintiffs' economic damages. Defendant's second motion *in limine* seeks to exclude Plaintiffs' expert's opinion on costs of future medical expenses which, it maintains, is improperly based upon the full amount billed by physicians, hospitals and clinics.

In California,

To recover damages for past medical expenses, the plaintiff must prove the reasonable cost of reasonably necessary medical care that he has received.

To recover damages for future medical expenses, the plaintiff must prove the reasonable cost of reasonably necessary medical care that he is reasonably certain to need in the future.

Judicial Council of California Civil Jury Instruction 3903A. For insured plaintiffs, the measure of damages is "the reasonable market or exchange value of medical services." Markow v. Rosner, 3 Cal.App.5th at 1050. The reasonable market or exchange value is "the amount paid pursuant to the reduced rate negotiated by the plaintiff's insurance company" not the amount billed by the medical provider. Id. (quoting Bermudez v. Ciolek, 237 Cal.App.4th 1311, 1332 (2015)). For uninsured plaintiffs, "the measure of medical damages is the lesser of (1) the amount paid or incurred; and (2) the reasonable value of the medical services provided." Bermudez, 237 Cal.App.4th at 1330. Medical bills may be used as evidence of reasonable value of services. Id. at 1331-32.

Under California's "collateral source" rule, "if an injured party received some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." Hernandez v. Cal. Hosp. Med. Ctr., 78 Cal. App. 4th 498, 504-05 (2000). However California Civil Code section 3333.1 provides:

(a) In the event the defendant so elects, in an action for personal injury against a health care provider based upon professional negligence, he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. Where the defendant elects to introduce such evidence, the plaintiff may introduce evidence of any amount which the plaintiff has paid or contributed to secure his right to any insurance benefits concerning which the defendant has introduced evidence.

(b) No source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant.

3

Section 3333.1 does not preclude recovery of the relevant damages, but "allows the jury to decide how to apply the evidence in calculation of damages." <u>Hernandez</u>, 78 Cal.App.4th at 506.

During the hearing, Plaintiffs argued it is Defendant's burden to demonstrate there is a collateral source from which benefits would be payable in the future and Defendant cannot make that showing because there is only speculative evidence that Plaintiff will continue to have access to TRICARE or that the ACA will continue into the future. In response, Defendant contended no one is making any predictions whether Plaintiff I. Perez will be covered by insurance in the future and maintained that it is not a collateral source issue but a calculation of damages issue. Defendant explained it intends to challenge Plaintiffs' experts' opinions on the appropriate value of future medical care damages and will not seek to introduce collateral evidence outside of evidence of supplemental security income benefits. Defendant contended Plaintiffs' expert did nothing to assess the reasonable value of services through either negotiated with insurance companies, negotiated rates with Medi-Cal or what TRICARE would cover. Defendant argued California prohibits the use of the amount billed for services, and, instead, the amount incurred is used to calculate damages.

In supplemental briefing, Defendant asserts <u>Pebley v. Santa Clara Organics, LLC</u>, 22 Cal.App.5th 1266 (2018), affirmed that the amount of the full bill is not relevant to future medical costs, and, therefore, Plaintiff's experts used the wrong methodology to price the life care plan. Defendant also argues <u>Pebley</u> is distinguishable because it involves a plaintiff who obtained care from a specialist outside his insurance's network and was, therefore, personally liable for all costs of surgery and treatment. Because he elected to receive medical care outside his insurance plan, Defendant argues, the plaintiff was treated as uninsured. Here, Defendant maintains, I. Perez has not received any care not covered by TRICARE and Plaintiffs have no credible evidence they will treat with non-TRICARE providers in the future. As such, Defendant argues, evidence of the full amount billed for medical services is irrelevant and inadmissible. Because Ms. Hyland relied exclusively on

4

the amount billed to develop her opinions, Defendant argues, her methodology is unsound, her analysis is legally deficient, and, the Court should, therefore, exclude her opinion on future medical costs.

In response, Plaintiffs argue the <u>Pebley</u> decision demonstrates that, if I. Perez chooses to treat with medical providers outside his insurance plan, he must be considered uninsured for purposes of assessing his economic damages, and, as an uninsured plaintiff, the amounts billed by medical providers is admissible to prove the reasonable value of those services. They further argue Defendant's contention that there is no credible evidence that I. Perez will treat outside TRICARE is premature, at best. Plaintiffs maintain they are currently not financially able to seek out-of network care. However, should they prevail in this matter, I. Perez will, presumably, have adequate damages awarded to ensure he can seek care and treatment from whatever medical providers he and his family chose. Plaintiffs maintain Defendant's suggestion that I. Perez be forced to seek only the available public assistance should be rejected.

In their first motion *in limine*, Plaintiffs maintain Defendant's damages experts intends to testify that many of Plaintiff I. Perez's future care costs will be paid by insurance that may be available through the ACA. Plaintiffs contend any assertion that he can rely on the ACA to cover his long term care needs is speculative because of the extensive and continuing efforts to repeal the Act. Citing <u>Cuevas</u>, Defendant contends courts should consider insurance coverage a plaintiff may obtain under the ACA which is the law of the land. Defendant argues it is purely speculative and unnecessary to litigate whether Congress may repeal the ACA. Defendant also argues it is not the government's burden to prove that laws on the books will remain valid, it is Plaintiffs' burden to prove their damages according to law, and Plaintiffs' life care planner did not consider any insurance that I. Perez currently has, or may obtain in the future, when calculating future medical expenses. As such, Defendant argues, Plaintiffs fail to meet their burden on this element of damages and the Court should deny the motion *in limine* which invites the Court to reverse a California Court of Appeal decision that remains good law.

In <u>Cuevas</u>, the California Court of Appeal found that trial court's decision to exclude evidence of future insurance benefits that might be available under the ACA on the basis that the ACA is unlikely to continue was an abuse of discretion in light of the defendant's evidence supporting the continued viability of the ACA and its application to the plaintiff's circumstances. 11 Cal.App.5th at 180-81. It is Plaintiffs' burden to prove damages which are "the reasonable costs of reasonably necessary medical care." Defendants may seek to present argument and evidence surrounding reasonable cost of reasonably necessary medical care, including the availability of insurance benefits under the ACA. In seeking to exclude evidence and argument that the ACA may cover I. Perez's future care costs, Plaintiffs contend the argument is speculative because Defendant provides no evidence to support the ACA's viability. The Court finds Plaintiffs argument surrounding the viability of the ACA goes to the weight of any evidence or argument presented by Defendant on the issue. Accordingly, Plaintiffs' motion is DENIED.

**2. Motion to Preclude Evidence or Argument Regarding Inadmissible Collateral Source Payments**

Plaintiffs maintain, under California law, evidence of collateral source payments from any source are inadmissible and cannot be taken into account in calculating the Plaintiffs' economic damages in absence to an exception to the rule, and even though section 3333.1 creates a limited exception to the collateral source rule in medical negligence cases, it does not apply to the benefits provided by Medi-Cal, Medicare, TRICARE, CCS, IHSS, any Regional Center, cash contributions by family members, or any other collateral source not specifically enumerated in the statute. Additionally, they argue evidence of benefits provided by Medi-Cal, Medicare, TRICARE, CCS, IHSS, or the Regional Centers will result in a double reduction in Plaintiff's compensation for his injuries: the first subtraction is by the jury when it does not award those damages upon introduction of the collateral source evidence, and the second subtraction occurs when the agency in question subsequently pursues reimbursement. Plaintiffs argue such a "double-dip" would improperly and unjustly deprive Plaintiff of damages he is legally entitled to

6

recover. Additionally, they argue taxpayers should not be forced to bear the consequences of Defendant's negligent conduct.

Defendant maintains I. Perez, as his father's dependent, receives medical care insurance through TRICARE, a component of the congressionally-established Military Health System of the Department of Defense, formally known as Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"). Defendant further contends CHAMPUS payments come from the general revenue of the United States and, therefore, are not payments from a collateral source. As such, Defendant argues, the collateral source rule does not apply toTRICARE/CHAMPUS payments, and Plaintiff's motion should be denied as it pertains to TRICARE.

Defendant further argues past Medi-Cal payments are not at issue because Plaintiffs fail to present any evidence of a Medi-Cal lien or expenses. As far as future medical care expenses, Defendant argues California law permits introduction of Medi-Cal negotiated rates because Plaintiffs' have the burden to prove the amount of future medical expenses I. Perez will incur as opposed to the amount billed. Therefore, Defendant contends, Medi-Cal negotiated rates are relevant and admissible independent of the collateral source rule.

Additionally, Defendant contends services provided by CCS, IHSS, Regional Centers or cash contributions from family members are not at issue in this case because Plaintiffs present no evidence and advance no claims for past expenses associated with these services.

Payments made through Medi-Cal "fall outside the scope of Civil Code section 3333.1. Id. Accordingly, Plaintiffs' motion is GRANTED to the extent it seeks to preclude Medi-Cal payments to reduce any damages received. However, Defendant maintains evidence of Medi-Cal negotiated rates are relevant to the amount of future medical expenses I. Perez will incur. The Court will allow evidence of Medi-Cal rates for that limited purpose.

Plaintiffs urge the Court to determine section 3333.1 limits its application to the collateral sources expressly enumerated in the statute, and, thereby, find the statute is not

applicable to TRICARE, CCS, IHSS and Regional Center payments.  Plaintiffs rely on Brown v. Stewart, 129 Cal.App.3d 331 (1982), in support of their argument.  In reversing the trial court's order granting the defendant's motion to strike a notice of lien, the Court held the imposition of a Medi-Cal lien in a medical malpractice action is not prohibited by section 3333.1.  The Court is not persuaded that the reasoning in Brown applies to other sources as it clearly address the ability to impose a Medi-Cal lien which is a unique issue unrelated to the ability to present evidence of other collateral sources.  While Defendant indicated it does not intend to present evidence of any collateral source other than supplemental security benefits, it appears these sources may be relevant to determining the reasonable costs of reasonably necessary medical services.  Accordingly, Plaintiffs' motion to exclude evidence of these sources is DENIED.

### 3.  Motion to Preclude Defendant from Offering Expert Medical Testimony from Physicians Not Designated as Experts

Plaintiffs anticipate Defendant intends to call and elicit expert opinion testimony from Plaintiffs' treating health care providers even though they did not designate them as expert witnesses in their disclosure.  Plaintiffs argue Defendant cannot elicit expert testimony from witnesses who were not listed in its designation pursuant to Rule 26 of the Federal Rules of Civil Procedure.  Plaintiffs further argue allowing Plaintiffs' treating physicians to duplicate the testimony of Defendant's retained experts would be prejudicial, a waste of time, and involve the needless presentation of cumulative evidence.

Defendant argues Plaintiffs' motion is procedurally and substantively defective because they do not identify any specific anticipated testimony from Navy healthcare providers they seek to exclude, or the particular basis to exclude such testimony. Defendant maintains it has yet to offer any expert opinions from its employees, and argues, as such, the motion is premature and should await resolution at trial.

During oral argument, Plaintiffs explained Defendant should be precluded from introducing testimony from treating physicians regarding causation, "to the extent" Defendant attempts to do so.  Defendant asserted it is permitted to have the treating

physicians testify to their opinions developed during the course of treating Plaintiff I. Perez. Defendant argued the Court could address the admissibility of any testimony, should the treating physicians attempt to testify to improper expert opinions during trial.

The Court agrees with Defendant. There is no indication Defendant intends to present improper expert opinion testimony from the treating physicians. If any treating physicians' testimony strays into improper expert testimony at trial, Plaintiffs can object and the Court can address the issue at that time. Accordingly, Plaintiffs' motion is DENIED without prejudice.

**4. Motion to Preclude Evidence or Arguments that Plaintiff I. Perez is Not Entitled to Compensation for Care that has been or will be Provided by His Family**

Plaintiffs contend Defendant may suggest Plaintiff I. Perez should not be compensated for the care provided, or that may be provided in the future, by his family members. They argue he is entitled to compensation for that care, regardless of whether the family has been, will be, or expects to be, compensated for that care under applicable law.

In response, Defendant argues Plaintiffs' motion seeks an advisory legal opinion on the recoverable elements of damages under California law that is not the proper subject of a motion *in limine*. Defendant maintains Plaintiffs may recover the reasonable value of extraordinary parental care necessitated by I. Perez' injury and they bear the burden of proving the damages were caused by Defendant and the amount of the damages. Defendant argues Plaintiffs present no expert opinion evidence of the reasonable value of extraordinary parental care, and, therefore, their claims fail. Nevertheless, Defendant contends, it is entitled to present evidence to challenge this claim.

As presented, Plaintiffs' motion seeks to preclude argument not evidence. As recognized by both parties, California law permits recovery of the reasonable value of nursing or attendant services provided by family members. See <u>Hanif v. Housing Authority</u>, 200 Cal.App.3d 635, 644 (1988). Plaintiffs may present evidence as to the

reasonable value of the services provided by the family and Defendant shall have the opportunity to rebut the testimony at trial. The Court DENIES Plaintiffs' motion.

### 5. Motion to Preclude Evidence Pursuant to Federal Rule of Evidence 403

Plaintiffs contend the following evidence was revealed during the course of this matter: (1) an alleged incident of domestic violence that occurred between Plaintiff's parents, Israel Perez and Norma Perez prior to his birth; (2) a bruise that was noted on Norma Perez's arm minutes after the delivery of I. Perez; and (3) Norma Perez's concern that she is not comfortable leaving I. Perez with her husband because she does not think that he has the patience to handle him. Plaintiffs argue evidence regarding those matters are irrelevant to the issues of the standard of care and damages, and to causation because no expert has testified that any such episode played any role in causing I. Perez's injuries. Even if such evidence had some relevance, Plaintiffs argue, it should be excluded pursuant to Rule 403. At the hearing, Plaintiffs further explained they believed Defendant is improperly attempting to introduce the evidence to place the family in a negative light and that should not be allowed.

Defendant argues the evidence of domestic violence is relevant to assessing care and causation issues and points to the following evidence in support:

On December 22, 2013, nine days before she gave birth to I. Perez, Norma Perez presented at the Naval Hospital Camp Pendleton ("NHCP") emergency room complaining of cramping and spotting. She arrived at the hospital from a women's shelter, so, pursuant to Marine Corps protocol, it opened a domestic violence investigation.

During Norma Perez's December 31, 2013, labor and delivery, her treating physicians were aware of, and considered in their management decisions, her history of domestic violence. For example, Certified Nurse Midwife Moran testified that she ruptured the membranes to see what the fluid looked like and it crossed her mind, based on the history of domestic violence, they may be dealing with a possible abruption.

The on-call obstetrician, Lieutenant Commander Enchanta Jenkins, noted domestic

16cv01911 JAH-MDD

abuse allegations in a supplemental note she created on December 31, 2013, and testified the fact that she included it in her notes suggests it was important for her to notice for the delivery because it could affect the patient or the baby.

Plaintiffs' expert obstetrician, Dr. Phillips, addressed domestic violence allegations in his expert report.

Defendant further argues it need not introduce expert opinion testimony that domestic violence was the sole cause of Plaintiffs' injuries. Instead, Defendant contends, it may use such evidence to impeach Plaintiffs' expert's opinion that domestic violence was not a cause of Plaintiffs' injuries. Additionally, Defendant contends Plaintiffs cannot establish the probative value of the evidence is substantially outweighed by unfair prejudice. Defendant also argued, at the hearing, that the words "domestic violence" are in the medical records and will be uttered by the medical providers during their testimony.

The Court finds Plaintiffs' concerns regarding prejudice do not warrant excluding the testimony under Rule 403 because this action will be tried in a bench trial. See E.E.O.C. v. Farmer Bros. Co., 31 F.3d 891, 898 (9th Cir. 1994) ("[I]n a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial") (Citing Gulf States Utilities Co. v. Ecodyne Corp., 635 F.2d 517 (5th Cir. 1981) (Noting that excluding relevant evidence on the basis of unfair prejudice has no logical application in a bench trial and is a useless procedure)). Accordingly, Plaintiffs' motion is DENIED without prejudice.

**6. Motion to Limit the Testimony of Mary Kay Dyes, MD**

Plaintiffs argue Dr. Dyes must be precluded from offering opinions regarding the standard of care because her report did not include any mention of the standard of care, and her deposition testimony further clarified that she had not formulated any opinions on that subject. They further argue Dr. Dyes must be precluded from offering opinions about her review of any of I. Perez's imaging studies because her initial and rebuttal reports contain no indication that she herself made any attempt to interpret, or even saw, any of the imaging studies. Plaintiffs also contend Dr. Dyes must be precluded from offering any rebuttal

opinions regarding the opinions of William Weiss, M.D. because she offered no comment regarding the opinions of Plaintiffs' pediatric neurology expert in her rebuttal report. Similarly, Plaintiff contends Dr. Dyes should be prevented from offering any rebuttal opinions regarding the life care plan prepared by Carol Hyland because she makes no mention of the life care plan prepared by Carol Hyland. Plaintiffs also argue Dr. Dyes' opinion that it is possible that I. Perez's brain injury is attributable to something other than hypoxic ischemic encephalopathy does nothing to refute the opinions of Plaintiffs' experts and I. Perez's treating physicians, that it is probable that his brain injury is attributable to hypoxic ischemic encephalopathy and is, therefore, irrelevant and should be excluded.

Defendant argues Dr. Dyes' opinions as to causation are relevant and admissible. Defendant maintains Dr. Weiss opines that hypoxic ischemic encephalopathy is the most likely etiology for I. Perez's brain injury, but the Court must test Dr. Weiss's opinions against the scientific consensus on the causes of cerebral palsy. Defendant contends it may challenge Dr. Weiss's causation opinions at trial, including through Dr. Dyes' opinions that there are other causal factors that call into questions Dr. Weiss's opinions. Furthermore, Defendant contends it was appropriate for Dr. Dyes to rely on MRI reports in this matter. Additionally, Defendant argues Carol Hyland did not develop a life care plan in this case, but only offers opinions concerning the cost of I. Perez's future care given Dr. Elaine Pico's opinion as to I. Perez's future care needs. Defendant argues Dr. Dyes offers numerous opinions critiquing Dr. Pico's life care plan and those opinions are relevant and admissible. Defendant also maintains Dr. Dyes offers numerous opinions in her opening report on I. Perez's neurological condition, life-expectancy, prognosis, and causation, several of which conflict with Dr. Weiss's opinions. Because those disagreements are addressed in her opening report, Defendant argues, she did not need to prepare a rebuttal report reiterating those differences, and, thus, she has and will offer opinions at trial rebutting Dr. Weiss's opinions. Defendant contends there is no basis to exclude these opinions.

During the hearing, Plaintiffs explained they wish to preclude Dr. Dyes from looking at the imaging studies she did not review in preparing her expert report and from offering testimony regarding Dr. Weiss's opinions outside those criticisms presented in her deposition and report. They further argued that none of Dr. Dyes' opinions regarding causation meet the reasonable medical probability standard.

In response, Defendant argued Dr. Dyes identified multiple facts relevant to I. Perez's injury in her report. Defendant contends Dr. Dyes did not identify an alternative cause of his injury, but argued, it does not have the burden of proof on causation. Defendant maintained it intends to introduce, through Dr. Dyes' testimony, other differentials that were ruled out too quickly or callously or not even considered.

Defendant does not dispute Plaintiffs' contention that Dr. Dyes provides no opinion as to the standard of care in her reports and testified during her deposition that she will not testify on the subject at trial. To the extent Dr. Dyes seeks to testify as to the standard of care, she is precluded from doing so at trial. Defendant admits Dr. Dyes did not perform her own interpretation of the images but she relied upon the radiology report, as neurologists in her field would do, in forming her opinion. There is no indication that Dr. Dyes seeks to testify as to the imaging studies themselves but to the reports to which she relied upon in forming her opinions. Accordingly, the motion is DENIED as to the testimony regarding the imaging studies.

With regard to any rebuttal opinions offered in response to Dr. Weiss's opinions, Plaintiffs clarified at the hearing they seek to preclude "new" criticism not stated in Dr. Dyes' report or deposition. To the extent Plaintiffs seek to preclude new opinions outside those provided in Dr. Dyes' report, the motion is GRANTED. Additionally, Plaintiffs do not dispute Defendant's contention that Ms. Hyland did not offer an opinion as to a life care plan for I. Perez but provides an opinion of costs of the life plan prepared by Dr. Pico. This Court's review of the excerpts of Ms. Hyland's report reflects she is providing an opinion concerning the costs of I. Perez's care given the opinions of Dr. Pico. Defendant maintains Dr. Dyes' opinion addressed the life care plan presented by Dr. Pico. To the

extent Plaintiffs seek to preclude Dr. Dyes from offering opinions as to Ms. Hyland's opinion regarding costs of the life care plan, the motion is GRANTED. To the extent Plaintiffs seek to preclude Dr. Dyes from testifying regarding her criticisms of the life care plan presented by Dr. Pico, the motion is DENIED.

Plaintiffs also seek to preclude Dr. Dyes' opinions regarding causation as irrelevant because they do not meet the reasonable probability standard. Under California law, the plaintiff has the burden of proving the defendant caused his or her injury. Ileto v. Glock, Inc., 349 F.3d 1191, 1203 (9th Cir. 2003). In a tort action such as the instant case, "causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case." Jones v. Ortho Pharmaceutical Corp., 163 Cal.App.3d 396, 402 (1985). Plaintiffs provide no authority for its contention that Defendant must prove possible other causal facts within a reasonable medical probability to challenge their expert's opinion as to causation. Dr. Dyes' opinions contained in her report or at deposition challenging Plaintiffs' expert's opinion regarding causation are relevant and admissible. As such, the motion to exclude such opinions is DENIED.

**7. Motion to Preclude the Opinions of Mark Gustafson Regarding Plaintiff's Claim for Loss of Earning Capacity**

Plaintiffs argue the opinions of Defendant's retained expert economist, Mark Gustafson, on the subject of Plaintiff I. Perez's claim for loss of earning capacity, should be excluded because he used the wrong measure of damages. They contend he improperly uses the consumer price index ("CPI") to determine wage growth and improperly deducts income taxes. They maintain, under California law, income taxes are not deducted and the CPI is not properly used to determine wage growth.

Plaintiffs maintain Mr. Gustafson relied upon the United States Supreme Court decision in Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523 (1983), in support of his use of the CPI. They argue Pfeifer is not applicable to this case because it was not an FTCA case, but was brought under the Longshoremen's Harbor Workers' Compensation

Act, and was rooted in federal maritime law. Additionally, they argue the court in <u>Pfeifer</u> refers to CPI because, prior to his injury, the plaintiff's wages were subject to cost-of-living adjustments based on the change during the previous year in the CPI. Plaintiff maintains Mr. Gustafson provided no coherent reason for using the CPI in this case other than his belief that use of the CPI to calculate a net discount rate for a lost earning capacity claim is mandated by federal law. However, Plaintiffs argue, this is not required by federal law and federal law is not applicable to this FTCA action.

Plaintiffs maintain the measure of damages for lost earning capacity is set forth in the Judicial Council of California's Civil Jury Instructions ("CACI") 3903D, and as applied to this case, the instruction would state:

> To recover damages for the loss of the ability to earn money as a result of the injury, I. PEREZ must prove: 1. That it is reasonably certain that the injury that I. PEREZ sustained will cause him to earn less money in the future than he otherwise could have earned; and 2. The reasonable value of that loss to him. In determining the reasonable value of the loss, compare what it is reasonably probable that I. PEREZ could have earned without the injury to what he can still earn with the injury.

In opposition, Defendant argues the disagreement between Mr. Gustafson and Plaintiffs' expert is not a basis to exclude Mr. Gustafson's opinion, but is more appropriately resolved during cross-examination. Defendant also contends Mr. Gustafson's use of a net discount rate to calculate loss earning capacity damages is well supported, economically and legally, and he explains in detail why he chose to use the CPI in his lost earning capacity net discount rate. Defendant argues the fact that Mr. Gustafson considered <u>Pfeifer</u> in addition to numerous other cases, does not warrant exclusion of his lost earning capacity opinions and maintains Plaintiffs' expert recognizes <u>Pfeifer</u> as precedent for using net discount rate methodology and courts in the Ninth Circuit, including the Southern District of California, have repeatedly applied <u>Pfeifer</u>'s teachings to calculating damages in FTCA cases. Defendant contends, by refusing to select one of the many rules proposed as the exclusive method for calculating an award for lost earnings, the Supreme Court, in <u>Pfeifer</u>, acknowledged there is no single way to estimate future wage

growth. Additionally, Defendant argues the Ninth Circuit has rejected using historical wage growth as a measure of inflation in calculating lost earnings.

Defendant also contends Mr. Gustafson explains why the Court should consider federal income taxes in developing a net discount rate. Defendant maintains the Ninth Circuit provides guidance on how to handle income taxes in lost earning capacity situations, by advising "if [the minor plaintiff's] future earnings are reduced by taxes . . . then the interest yield of the lump sum award should be reduced by taxes. . . When both the earnings and the interest yield are adjusted for taxes, the earnings adjustment reduces the amount of the lump sum while the interest yield adjustment increases it." Def's Opp. at 4 (Doc. No. 42) (citing Trevino v. United States, 804 F.2d 1512 at 1518-19 (9th Cir. 1989)). Defendant maintains Mr. Gustafson did exactly that when he adjusted both the interest rate and expected wages for taxes. Defendant contends California law is in accord. Defendant maintains California and federal law preclude introduction of federal income tax evidence only without making corresponding tax adjustments to interest in a net discount rate, and argues Mr. Gustafson considered taxes both on income and interest which comports with California and federal law.

Plaintiffs' challenge to Mr. Gustafson's opinion is based upon his use of the CPI to determine wage growth and his deduction for taxes in calculating damages. A review of Mr. Gustafson's report demonstrates he uses the CPI to measure inflation in calculating a net discount rate. He uses the net discount rate to "determine the present value of the stream of future cash flows" I. Perez could have earned to ascertain the value of his lost earning capacity as of the date of his injury. See Gustafson Report, Pla's Exh. 2 (Doc. No. 32-2). He cites to medical malpractice and disability cases that used a net discount rate.[1] While the use of the CPI is not mandated by federal law, it has been used by courts to

---

[1] Pfeifer, 462 U.S. 523; Trevino, 804 F.2d 1512; Veasley v. United States, 12cv3053 WQH-WVG (S.D.Cal. 2016); McCarthy v. United States, 870 F.2d 1499, 1503 (9th Cir. 1989).

determine an injured parties' lost earning capacity in FTCA cases including in this district. See Veasley v. United States, 12cv3053 WQH-WVG (S.D.Cal. 2016). Accordingly, Mr. Gustafson's use of the CPI does not affect the reliability or relevance of his opinion. The Court finds Plaintiffs' challenge to Mr. Gustafson's opinion based on his use of the CPI goes to the persuasiveness of the opinion rather than its reliability and is appropriately addressed during cross-examination and not admissibility. See Ellis v. Costco Wholesale Corp. 657 F.3d 970, 982 (9th Cir. 2011).

Mr. Gustafson's use of taxes may present an issue as to the correctness of his measure of damages. The case cited by Defendant in support of its contention that California law does not preclude including taxes in the calculation of lost earning capacity, Canavin v. Pacific Southwest Airlines, 148 Cal.App.3d 512 (1983), does not hold that taxes may be used. The court held it was prejudicial error for the trial court to refuse to instruct the jurors to use the lower discount rate of a tax-free investment if they based their computation of lost future support on net income rather than gross salary. The trial court permitted evidence of both net and gross earnings, and interest rates on discount rates from both taxable bonds and tax-free bonds at trial, and denied the plaintiffs' request for an instruction directing the jury to use the lower discount rate if they used net instead of gross income. Finding the uninstructed jury could rely on both the net income after taxes and the greater discount rate based upon the taxable bond interest which would deny the plaintiffs full measure of their award because it is subjected to double taxation, the court of appeal determined the trial court prejudicially erred in failing to give the proffered instruction. Id. at 523. The opinion, written by Justice Works, noted that the majority of the panel believed it is error to compute damages based upon net income, but stated, "even if such conduct constitutes error, it is not reversible per se, but mandates reversal only where it is reasonably probable a result more favorable to the appealing party would have been obtained in the absence of the error." Id. at 522. In his concurring opinion, in which another justice joined, Justice Staniforth disagreed with the admission of evidence of after-tax earnings, finding the majority rule in California is that taxes are irrelevant, there is no

legal-societal mandate urging consideration of tax consequences, and allowing consideration of taxes "would create a windfall for the defendant" Id. at 542. In his dissenting opinion, Justice Works explained the admission of evidence of taxes should be within the discretion of the court.

It is clear from the opinion, even if the use of taxes for calculating damages is not prohibited in California, it is strongly disfavored. However, because this action will be tried before the Court rather than a jury, the Court will permit Mr. Gustafson to testify as to his opinion of lost earning capacity, and Plaintiffs can challenge the correctness of his calculation on cross-examination. Therefore, the motion is DENIED.

**8. Motion to Limit the Testimony of David A. Miller, MD**

Plaintiffs contend Dr. Miller's report did not include any mention of the cause of I. Perez's injuries, no mention of any problems during the prenatal period that could explain I. Perez's injuries, and no mention of any history of domestic violence. They argue Dr. Miller should not be permitted to add new opinions because he failed to comply with Rule 26 which requires that a retained expert must provide a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." They contend if he is permitted to add new opinions now, the testimony would be prejudicial because they have no opportunity to prepare for it, and, therefore, inadmissible pursuant to Rule 403.

Defendant maintains Plaintiffs do not identify any opinions Dr. Miller presented in his report or at deposition that are inadmissible. Instead, they contend, Plaintiffs seek a blanket order about evidence that may never be presented. Defendant argues this is improper.

During the hearing Plaintiffs explained that the purpose of the motion is they did not want to be surprised if Dr. Miller tries to express an opinion on subjects not addressed in his report. Defendant responded that it intends to elicit opinions from Dr. Miller that are contained in his report and the Court could best address whether the Defendant attempts to solicit opinions outside the expert report at trial.

18

The Court agrees with Defendant. If Dr. Miller attempts to offer opinions at trial not contained in his report, Plaintiffs can object and the Court can address it at that time. Accordingly, the motion is DENIED.

**B. Defendant's Motions**

**1. Motion to exclude Plaintiffs' damages for future private school expenses**

Defendant argues Plaintiffs' claim for damages for private school expenses lacks any basis in law and opinions supporting this claim should be excluded. Specifically, Defendant contends Dr. Pico's report identifies a private school setting as one of I. Perez's life-long care needs, Ms. Hyland opines I. Perez should enroll at the Institute for Effective Education and the Teri Campus of Life at an annual tuition cost in excess of $50,000 per year, and Robert Johnson, Plaintiffs' economist, values Ms. Hyland's estimate for private school tuition at $1,567,923 in future value, which he equates to $996,591 in present value. However, Defendant maintains, the Individuals with Disabilities Education Act ("IDEA"), guarantees children with disabilities a free appropriate public education, and if the state fails to provide I. Perez with educational services, the IDEA provides Plaintiffs with administrative and judicial redress to enforce his right. Additionally, Defendant maintains, Plaintiffs are entitled to future costs they will actually incur, under California law, and Plaintiffs cannot recover damages for services an entity, such as the government, will provide for free. Defendant argues permitting damages for private school would place I. Perez in a better position than he would have been had the wrong not occurred which is prohibited by California law. Defendant contends Plaintiffs' request for private school education damages is legally irrelevant and should, therefore, be excluded.

In response, Plaintiffs contend Defendant has an expert to contradict Dr. Pico's testimony and the Court can give each expert's opinion its proper weight to resolve the differences in their conclusions as to whether private school is a compensable item of future damages. They further contend Defendant's argument that private school will place I. Perez in a better position than he would otherwise be absent his injury shows a lack of understanding of the nature and extent of his brain injury and resultant cognitive

impairment.  Plaintiffs also argue there is no legal authority to exclude private school expenses.

In reply, Defendant contends Vista Unified School District is currently providing I. Perez an education that gives him the best chance of an equal playing field, consistent with the IDEA and Plaintiffs have no evidence Vista Unified or any other school district will fail to comply with the IDEA in the future.  Defendants contend Plaintiffs present expert testimony that I. Perez requires a small classroom size, private school setting and one-to-one aide, and by law, Vista Unified and other districts are required to provide those services.  Defendant argues Plaintiffs speculate it is possible public schools may not provide the education I. Perez requires, but this is not a basis for tort damages in an FTCA case.  Defendant contends the possibility that I. Perez may need to pursue litigation in the future to secure his rights guaranteed under the IDEA fails to meet the burden of presenting evidence to establish damages are certain to result in the future.

At the hearing, Defendant maintained that Plaintiff's argument for private school is that I. Perez is not receiving a private education now, it is possible that he might have problems at a public school receiving the care he is required by law in the future and he may have to sue the school or go to private school.  Defendant argued this is speculative and the damages he seeks are duplicative of the services he will receive for free under the law.

In opposition, Plaintiffs argued that it is not hard to envision public schools will have difficulty accommodating I. Perez's needs.  Plaintiff further argued California law provides families the right to sue a school to force them to pay for attendance at a private school when the school fails to provide a free and fair public education and they are asking that those damages be provided as compensation now.  Plaintiff also maintained the life care plan recommends either an educational advocate and educational therapist to get I. Perez through public school or a private school setting, and the Court will make the determination based upon the testimony of the expert.

While the contention that a public school may fail to provide I. Perez with the education he is entitled to by law appears speculative, the Court finds testimony regarding the appropriateness of private school expenses is relevant. Accordingly, Defendant's motion to exclude testimony for future private school expenses is DENIED.

**2. Motion to Exclude Plaintiffs' Opinions on the Costs of Future Medical Expenses**

In its second motion *in limine* Defendant argues Ms. Hyland's opinions on the cost of future medical care costs, based upon the full amount billed by physicians, hospitals and clinics are inadmissible as irrelevant because they do not reflect the amount accepted as payment from TRICARE or Medi-Cal. Additionally, Defendant contends, Ms. Hyland included three prescription medications, glycopyrrolate, levetriacetam and albuterol, which she priced through "Good Rx" and used the charged price rather than the portion of the costs paid by I. Perez as a result of his insurance. Defendant contends, without a distinction between the amount charged and billed and the amount accepted as payment in full from TRICARE and Medi-Cal, the opinions on future medical care costs cannot be tested and lead to overall reliability concerns. Additionally, Defendant argues Ms. Hyland's opinions are irrelevant because her opinions on the charged or billed price provide no opinions as to I. Perez's actual loss. Awarding Plaintiffs damages for medical care the United States will provide to I. Perez through TRICARE, Defendant argues, would allow double recovery. Therefore, Defendants seek an order excluding the following portion of Ms. Hyland's life care plan:

> Part I.A (neurologist); Part I.B (neuro-ophthalmologist); Part I.C (orthopedist); Part I.D (pediatrician/internal medicine); Part I.E (physical medicine and rehabilitation specialist); Part I.F (gastroenterologist); Part I.G (developmental pediatrician); Part I.H (endocrinologist); Part I.I (pulmonologist); Part I.J (urologist); Part I.K (other specialists); Part I.L (podiatrist); Part I.M (dentist); Part I.N (feeding therapy); Part I.R (applied behavior analysis); Part I.S (counseling); Part I.V (physical and occupational therapy); Part I.W (speech therapy); Part I.X (emergency room visits); Part I.Y (acute hospitalization); Part I.Z (laboratory and diagnostic testing); and Part II.A (medications except for gelmix).

Defendant also contends Mr. Johnson's opinions on the total present value of Ms. Hyland's flawed life care plan should also be excluded.

Plaintiffs, as an initial matter, argue Defendant's challenge is pre-mature and the Court should allow Plaintiffs to lay a proper foundation at trial for their expert's opinion testimony. They also argue the amounts certain insurers might pay for future medical costs is speculative. Plaintiffs maintain Ms. Hyland will testify at trial to the propriety of the sources she used for pricing future costs versus the speculative applicability of certain insurers.

In reply, Defendant argues it motion is ripe for adjudication because it identifies the specific opinions it seeks to exclude and the basis for exclusion.

Defendant seeks to exclude the opinion of Ms. Hyland because it is based on the amount billed for certain medical services rather than the rate negotiated by insurance. Plaintiffs assert I. Perez must be treated as uninsured which allows for the reasonableness of medical costs be based on the amount billed because he may seek treatment outside his medical plan. The Court finds Plaintiffs should be allowed the opportunity to lay a foundation to support their contention Plaintiff I. Perez should be treated as uninsured to support an opinion based upon billed services. According, Defendant's motion is DENIED.

**3. Motion to Exclude Dr. William Weiss's Opinions on the Qualification and Competency of Navy Radiologists to Interpret MRI Studies Performed on I. Perez**

Defendant contends Dr. Weiss offers certain neuroradiological opinions, including: (1) an opinion on a MRI study performed on I. Perez on January 7, 2014, in which he disagrees with a Navy doctor's interpretation and (2) an opinion that the Navy doctor that interpreted the MRI, Dr. Erik Bergman, is not qualified. Defendant disagrees with the first opinion but believes the disagreement goes to the weight of the opinion and therefore, it is not the subject of this motion. Defendant only seeks to preclude the second opinion.

Defendant argues Dr. Weiss is not qualified to assess Dr. Bergman's credentials, as he is neither a radiologist, nor a neuroradiologist, he does not have board certifications in

radiology or neuroradiology, and, by his own admission, he is not qualified to offer an opinion on Dr. Bergman's credentials or ability to interpret the January 7, 2014 MRI study. Defendant further argues Dr. Weiss has no foundation to opine on Dr. Bergman's qualifications as the sole basis for Dr. Weiss's opinion that Dr. Bergman is not qualified to interpret the January 7, 2014 MRI study is Google. Defendant contends Dr. Weiss's opinion as to Dr. Bergman's qualifications and experience will not assist the trier of fact and is unfairly prejudicial, and should be excluded.

In opposition, Plaintiffs contend Defendant's arguments go to the weight of the evidence.

At the hearing, Defendant maintained Dr. Weiss admitted he is not qualified to speak on the competence of Navy radiologists he never met. Plaintiffs explained Dr. Weiss's opinion as to Dr. Bergman's qualifications were based upon not seeing any pediatric neuroradiology background when he conducted a Google search.

Federal Rule of Evidence 702 requires that a witness testifying as an expert be "qualified as an expert by knowledge, skill, experience, training or education." Plaintiffs do not challenge Defendant's assertion that Dr. Weiss admits he is not qualified to offer an expert opinion as to Dr. Bergman's competency to interpret the MRI studies and they provide no evidence to support Dr. Weiss has the knowledge, skill, experience, training or education to do so. Furthermore, Dr. Weiss's internet search does not serve as sufficient facts or data upon which to base his opinion. Accordingly, the motion to exclude Dr. Weiss's opinion as to the qualification of Dr. Bergman is GRANTED.

## III. Conclusion and Order

Based on the foregoing, IT IS HEREBY ORDERED:

1. Plaintiffs' motion to preclude evidence or argument that future collateral source payments should be deducted from Plaintiff's economic damages (Doc. No. 26) is DENIED.

2. Plaintiffs' motion to preclude evidence or argument regarding inadmissible collateral source payments (Doc. No. 27) is GRANTED IN PART AND DENIED IN

16cv01911 JAH-MDD

PART. The motion is GRANTED to the extent it seeks to preclude Medi-Cal payments to reduce damages. The motion is otherwise DENIED.

3.     Plaintiffs' motion to preclude Defendant from offering expert medical testimony from physicians not designated as experts (Doc. No. 28) is DENIED.

4.     Plaintiffs' motion to preclude evidence or arguments that Plaintiff I. Perez is not entitled to compensation for care that has been or will be provided by his family (Doc. No. 29) is DENIED.

5.     Plaintiffs' motion to preclude evidence pursuant to Federal Rule of Evidence 403 (Doc. No. 30) is DENIED.

6.     Plaintiffs' motion to limit the testimony of Mary Kay Dyes, MD (Doc. No. 35) is GRANTED IN PART AND DENIED IN PART, as follows:

    a.   The motion is GRANTED as to opinions on the standard of care, new rebuttal opinions outside her reports, and opinions addressing Ms. Hyland's opinion regarding costs of the life care plan;

    b.   The motion is DENIED as to testimony regarding the imaging studies, rebuttal opinions offered in response to Dr. Weiss's opinions contained in her reports, opinions addressing Dr. Pico's life care plan and opinions on causation.

7.     Plaintiffs' motion to preclude the opinions of Mark Gustafson regarding Plaintiff's claim for loss of earning capacity (Doc. No. 32) is DENIED;

8.     Plaintiffs' motion to limit the testimony of David A. Miller, MD (Doc. No. 33) is DENIED.

9.     Defendant's motion to exclude Plaintiffs' damages for future private school expenses (Doc. No. 20) is DENIED;

10.    Defendant's motion to exclude Plaintiff's opinions on the costs of future medical care for I. Perez (Doc. No. 23) is DENIED;

11.    Defendant's motion to exclude Dr. William Weiss's opinions on the qualifications and competency of Navy radiologist to interpret MRI studies performed on

I. Perez (Doc. No. 24) is GRANTED.

DATED: July 25, 2018

JOHN A. HOUSTON
United States District Judge

16cv01911 JAH-MDD